\*\* E-filed March 17, 2011 \*\*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GLENN HARPER, | No. C09-05758 JW (HRL) |
| Plaintiff, | **ORDER RE: PRODUCTION OF INTERNAL AFFAIRS FILE** |
| v. | |
| CITY OF SAN JOSE, et al., | [Re: Docket Nos. 28, 31, 33, 38, 40] |
| Defendants. | |

## BACKGROUND

Plaintiff Glenn Harper ("Harper"), an African-American police officer with the San Jose Police Department ("SJPD"), filed this action against the City of San Jose (the "City"), the SJPD, and SJPD Chief Robert Davis ("Davis") (collectively, "Defendants") for racial discrimination and retaliation in violation of 28 U.S.C. § 1983. After he was passed over for promotion and complained of racial discrimination to state and federal agencies, Harper was transferred from vice to patrol. Docket No. 1 ("Complaint") ¶¶ 6-10. He was told that he was being transferred because a subordinate female officer in his unit made a discrimination/harassment complaint against him. Id. ¶ 10. Harper claims that Defendants used the complaint — which was ultimately determined by the SJPD Internal Affairs ("IA") Department to be unfounded — as a pretext to demote him in retaliation for his complaints of racial discrimination. Id. ¶ 12.

Harper served the IA Department with a subpoena for "all internal affairs files and complaints" related to him. Defendants objected to the production of any internal affairs file and any

1  related recorded statements, summaries of statements, and any testimony from SJPD officers about
2  the investigation contained in the file. While Harper has been allowed to personally review the file,
3  Defendants have refused to produce it in response to his discovery request. In January 2011, this
4  Court accepted the parties' stipulation to submit the contents of the internal affairs file *in camera* to
5  the Court and to brief their respective positions. Docket No. 28; Docket No. 33 ("Plaintiff's
6  Opening Brief"); Docket No. 31 ("Defendants' Opening Brief"); Docket No. 40 ("Plaintiff's Reply
7  Brief"); Docket No. 38 ("Defendants' Reply Brief"). No hearing was set or requested, nor is one
8  necessary. Docket No. 28.

## DISCUSSION

A. <u>Relevance</u>

As an initial matter, Defendants challenge the relevance of the internal affairs file.

Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." <u>Id</u>. A relevant matter is "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351 (1978). Moreover, discovery is not limited to only those specific issues raised in the pleadings since it is designed to define and clarify the issues in the case. <u>Miller v. Pancucci</u>, 141 F.R.D. 292, 296 (C.D. Cal.1992) (citing <u>Oppenheimer</u>, 437 U.S. at 351). As such, the question of relevancy should be construed "liberally and with common sense" and discovery should be allowed unless the information sought has no conceivable bearing on the case. <u>Id</u>.

Harper, who has been permitted to view the internal affairs file, correctly notes that the papers state, in some places, that the "complainant" is the Office of the Chief of Police. This, he says, shows that the investigation "was initiated by the Chief's office in an apparent attempt to retaliate against [him] and manufacture further pretexts not to promote him." Plaintiff's Opening Brief at 5-6. However, upon *in camera* review, it is clear that the papers — more often than not — identify the subordinate officer as the "complainant." In fact, one page separately lists the

1  "complainant" as both the Office of the Chief of Police and the subordinate officer. While Harper's
2  argument is a tenuous one, the Court believes that the internal affairs file could lead to the discovery
3  of admissible evidence.

### B. Qualified Privilege for Official Information

Defendants also argue that the internal affairs file is protected from disclosure as official information.[1] Disclosure, they argue, would chill future internal affairs investigations because, if individuals knew that their statements could be disclosed, it could "inhibit the flow of information." Defendants' Opening Brief at 4. Such a result "could potentially discourage exhaustive investigation of incidents and candid analysis of issues in similar cases in the future." Id.

The Court is not persuaded. Several courts, including this one, have rejected identical "chilling effect" arguments. Watson v. Albin, No. C-06-07767 RMW (HRL), 2008 WL 1925257 (N.D. Cal. Apr. 30, 2008) ("[Defendant's] arguments that disclosure would discourage exhaustive internal investigations are unpersuasive. Courts in this district have previously rejected such claims, and there is no reason to depart from that reasoning here.") (citing Kelly, 114 F.R.D. at 672; Soto, 162 F.R.D. at 613-14); Mai Thi Vu v. Clark, No. C05-02605 RMW (HRL), 2006 WL 3318096, at *2 ("There is no support for an argument that disclosure would lead to a breakdown of the IA investigation system and in the past, courts have struck down such reasoning.") (citing Kelly, 114 F.R.D. at 672; Soto, 162 F.R.D. at 613-14). The Court sees no reason to depart from this conclusion.

### C. Privacy

Defendants also contend that disclosure would violate the privacy rights of the individuals who provided statements during the internal affairs investigation.

---

[1] Federal common law recognizes a qualified privilege for official information. Kerr v. U.S. Dist. Ct. for the Northern Dist. of Cal., 511 F.2d 192, 198 (9th Cir. 1975). "In determining what level of protection should be afforded by this privilege, courts conduct a case by case balancing analysis, in which the interests of the party seeking discovery are weighed against the interests of the governmental entity asserting the privilege." Soto v. City of Concord, 162 F.R.D. 603, 613 (N.D. Cal. 1995) (citing Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033-34 (9th Cir. 1990), cert den., 502 U.S. 957 (1991); Hampton v. City of San Diego, 147 F.R.D. 227, 230-31 (S.D. Cal. 1993); Miller, 141 F.R.D. at 300); Kelly v. City of San Jose, 114 F.R.D. 653, 660 (N.D. Cal. 1987). "In the context of civil rights suits against police departments, this balancing approach should be 'moderately pre-weighted in favor of disclosure.'" Id. (quoting Kelly, 114 F.R.D. at 661).

1    This court recognizes a right of privacy respecting confidential law enforcement records.
2    Kelly, 114 F.R.D. at 660-61; Soto, 162 F.R.D. at 616. Such claims are closely scrutinized when the
3    documents at issue are related to the officers' work with the police department. Soto, 162 F.R.D. at
4    616 (suggesting that internal investigation files are not protected by right of privacy when
5    documents "related simply to the officers' work as police officers") (citing Denver Policemen's
6    Protective Ass'n v. Lichtenstein, 660 F.2d 432, 435 (10th Cir. 1981)). If an individual's privacy is at
7    stake, courts balance "the need for the information sought against the privacy right asserted." Soto,
8    162 F.R.D. at 616. However, "a carefully drafted protective order could minimize the impact" of
9    disclosure. Id.

10   Plaintiffs cite several cases in which courts have allowed disclosure of confidential law
11   enforcement records despite claims of privacy. See, e.g., Stewart v. City of San Diego, No.09cv844-
12   IEG (WMc), 2010 WL 4909630, at *3 (S.D. Cal. Nov. 24, 2010); Watson, 2008 WL 1925257, at
13   *2; Vu, 2006 WL 3318096, at *5; Hernandes v. City of Hayward, No. C-03-4757 EMC, 2005 WL
14   119871, at *4 (N.D. Cal. Jan. 20, 2005); Kelly, 114 F.R.D. at 672. Defendants attempt to distinguish
15   those cases by saying that they involved private citizen plaintiffs who sued police officers and who
16   were not already privy to the contents of the law enforcement records sought. This case is different,
17   they say, because Harper is a police officer and has already been allowed access to the file and
18   knows who provided statements as part of the investigation. Defendants' Reply at 1-3. It is true that
19   these type of cases usually involve a private citizen who has sued an officer for civil rights
20   violations and who then tries to discover that officer's law enforcement records to see if the officer
21   had previously been investigated or disciplined. But the distinction noted by Defendants does not
22   distinguish the reasoning behind those decisions. In fact, it supports disclosure. In this case, the
23   officer whose conduct was subject to investigation and who would normally resist disclosure on
24   privacy grounds — Harper — is the same officer who seeks disclosure. As Harper correctly notes,
25   the privacy interests at stake in this instance are even less than those in the cases where courts
26   nevertheless ordered production.

27   Perhaps more importantly, however, Defendants' privacy argument is undercut by the fact
28   that Harper was already allowed to view the internal affairs file. The interviewee's identities and the

4

conclusions of the IA Department are not unknown to Harper. In such circumstances, the Court does not see the harm in allowing Harper to have a copy of the file, subject to a protective order.

## CONCLUSION

Based on the foregoing, the Court ORDERS that the SJPD IA Department produce a copy of the contents of the internal affairs file to Harper within 14 days from the date of this order. However, because Defendants' concerns are well-taken, the contents of the file shall be produced pursuant to a protective order, which the Court instructs the parties to submit for approval within 7 days from the date of this order.

**IT IS SO ORDERED.**

Dated: March 17, 2011

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C09-05758 JW (HRL) Notice will be electronically mailed to:**

Michael J. Dodson            cao.main@sanjoseca.gov
Nkia Desiree Richardson      cao.main@sanjoseca.gov
Thomas Kevin Bourke          TallTom2@aol.com

**5:09-cv-05758-JW Please see General Order 45 Section IX C.2 and D; Notice has NOT been electronically mailed to:**

Rizwan Ramzanali Ramji
Law Office Thomas K Bourke
One Bunker Hill
601 West Fifth Street
Eighth Floor
Los Angeles, CA 90071-2094

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**